WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blake Haines, | No. CV-15-00002-TUC-RM (EJM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Get Air LLC, et al., | |
| Defendants. | |

This personal injury action involves a dispute between the Plaintiff, Blake Haines, and the Defendant companies: Get Air, LLC, Quality Foam & Fiber Products, Inc., and Pacific Urethanes, LLC. Haines was injured while performing a flip at Get Air Tucson, an indoor trampoline park, and is now a quadriplegic. Haines alleges Defendant Get Air, LLC produced a defective Employee Handbook ("EH") used by Get Air Tucson. Haines further alleges that Defendant Pacific Urethanes, LLC manufactured defective foam that Defendant Quality Foam & Fiber Products, Inc. defectively cut into blocks, which were used at Get Air Tucson. Haines' claims against the Defendant companies are based on negligence, products liability, and implied warranties.

Pending before the Court is Defendant Get Air, LLC's Motion to Dismiss. (Doc. 97). Get Air, LLC alleges that this Court lacks personal jurisdiction over it because Get Air, LLC has not engaged in any business in Arizona and because there are no facts supporting general or specific personal jurisdiction over it. Plaintiff contends that he has made a prima facie showing that the defective EH used by Get Air Tucson was created

and supplied by Get Air, LLC and therefore Get Air, LLC purposefully directed its conduct at Arizona. (Doc. 102 at 14). Alternatively, Plaintiff argues that there remains a factual dispute regarding personal jurisdiction which must be resolved in his favor. *Id.* at 16.

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned for a Report and Recommendation. (Doc. 25).

The motion has been fully briefed by the parties, and the Court heard oral arguments on June 6, 2016. The Court then allowed the parties additional time to conduct jurisdictional discovery, and the parties submitted supplemental briefs on January 17, 2017. (Docs. 154, 155). For the reasons stated below, the Magistrate Judge recommends that the District Court enter an ordering denying Get Air, LLC's Motion to Dismiss.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 2013 Haines was at the Get Air Tucson indoor trampoline park and performed a move where he flipped multiple times off of a platform and into a foam pit. (Doc. 12 at 9). Haines "suffered catastrophic injuries from the maneuver, including fractured cervical vertebrae resulting in paralysis." *Id*. Following this incident, Haines filed suit in Pima County Superior Court on September 5, 2014 against the following defendants: Get Air Tucson, Inc.; Get Air Tucson Trampolines, LLC; Get Air Management, Inc.; Get Air, LLC; Trampoline Parks, LLC; Patti Goodell; Jacob Goodell; Kiersten Goodell; Scott Goodell; Alan McEwan Jr.; Val Iverson, individually and as owner or operator of Trampoline Parks, LLC; Jane and/or John Does #s 1-20; ABC Corporations 1-10; XYZ Partnerships 1-10; and ABC Limited Liability Corporations (LLCs) 1-10. (Doc. 6 Ex. 1). Haines alleged claims for negligence, negligent design, negligence in safety standards, negligent supervision, negligent hiring and training of personnel, piercing the corporate veil, and punitive damages. *Id*.

On January 5, 2015, Defendant Get Air Tucson Trampolines, LLC removed the case to this Court, alleging all parties were diverse and the amount in controversy exceeded $75,000.00. (Doc. 1 at 1–2). Get Air Tucson Trampolines, LLC stated its

1    removal was timely because it was served on December 6, 2014 and 28 U.S.C. § 1446(b)

2    requires removal within 30 days of service. *Id*. at 2–3. Get Air Tucson Trampolines, LLC

3    did not indicate whether any of the other defendants joined or consented to the removal.

4         On January 13, 2015, Haines filed a Notice of Filing Amended Pleading Pursuant

5    to LRCiv 15.1(b), averring that no defendant had filed an answer to his original

6    Complaint. (Doc. 8). Haines' First Amended Complaint ("FAC") named Alicia Durfee

7    and Scott Hansen as additional defendants, and alleged Durfee was a manager or

8    supervisor at Get Air Tucson, and Hansen was an employee who was acting as a de facto

9    manager at the time of Haines' injury. (Doc. 12 at 5–6).

10        On January 23, 2015, Haines filed a Motion to Remand to State Court. (Doc. 17).

11   Haines alleged two arguments in his motion: One, the federal court lacked subject matter

12   jurisdiction because there was not complete diversity among the parties, and two,

13   removal was procedurally improper because the removing party did not establish

14   unanimity among all served defendants for removal. *Id*. at 1–2. Get Air Tucson

15   Trampolines, LLC and the Goodell, Durfee, and Hansen defendants counter argued that

16   Haines' addition of Hansen and Durfee as parties was a "thinly veiled attempt to avoid

17   federal jurisdiction." (Doc. 19 at 1).

18        Following oral arguments on the Motion to Remand, the Court granted the Motion

19   on April 15, 2015 and remanded this matter back to Pima County Superior Court. (Doc.

20   31). The Court concluded that the case was improperly removed to federal court because

21   all properly served defendants had failed to join or consent to the removal, and because

22   Haines properly added Hansen and Durfee as defendants in his FAC, which destroyed the

23   Court's diversity jurisdiction.

24        Following remand, the Plaintiff and several defendants entered into a settlement

25   agreement. The Superior Court then dismissed the defendants who were parties to the

26   settlement agreement, leaving two remaining defendants: Get Air, LLC and Quality

27   Foam & Fiber Products, Inc. (Doc. 32 Ex. 3).

28        On June 12, 2015 Defendant Get Air, LLC removed the case to this Court,

alleging that all parties are diverse due to the Superior Court's dismissal of the non-diverse defendants, and that the amount in controversy exceeds $75,000.00. (Doc. 32 at 1–2). Defendant Quality Foam & Fiber Products, Inc. filed a notice consenting to and joining in the notice of removal. (Doc. 35). On July 2, 2015, the Court issued an order directing the Clerk to reopen the case and to recognize Plaintiff's Second Amended Complaint ("SAC") (filed in Superior Court) as the operative complaint in this matter. (Doc. 39).

On July 30, 2015 Defendant Get Air, LLC filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a cause of action pursuant to Fed. R. Civ. P. 8 and Rule 12(b). (Doc. 43). On August 25, 2015 Plaintiff filed a Motion for Leave to Amend Complaint to add and clarify allegations specific to Defendant Get Air, LLC, and to add Pacific Urethanes, LLC as a products liability defendant. (Doc. 45). On February 8, 2016 the District Court entered an Order adopting the undersigned's Report and Recommendation, granting Plaintiff's Motion to Amend and denying Get Air, LLC's Motion to Dismiss as moot. (Doc. 83).

On February 8, 2016 Plaintiff filed his Third Amended Complaint ("TAC"), which names Pacific Urethanes, LLC as an additional products liability defendant. (Doc. 84). The TAC also alleges that Get Air, LLC developed defective safety rules and supplied them to Get Air Tucson.

On March 1, 2016, Defendant Get Air, LLC filed a Motion to Dismiss for lack of personal jurisdiction, arguing that it has not engaged in any business in Arizona, and that there are no facts supporting general or specific personal jurisdiction over it. (Doc. 97).[1] Get Air, LLC specifically argues that the EH used by Get Air Tucson was created by Amy Iverson, an independent contractor for Trampoline Parks, LLC, and that Get Air, LLC had no knowledge or intent that the EH would be distributed to or utilized by Get Air Tucson. Plaintiff contends that Amy Iverson received the assignment to review and

---

[1] Defendant Pacific Urethanes, LLC also filed a Motion to Dismiss for lack of jurisdiction (Doc. 103), which will be addressed in a separate Report and Recommendation.

1  edit the EH from Get Air, LLC, and that the EH was knowingly provided by Get Air,

2  LLC to Jacob Goodell to take to Tucson. (Doc. 154 at 5).

3  **II. STANDARD OF REVIEW**

4          To establish a prima facie case for personal jurisdiction, the plaintiff must show

5  that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident

6  defendant; and (2) the exercise of jurisdiction comports with principles of due process.

7  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). The

8  Arizona long-arm jurisdictional statute provides that this Court "may exercise personal

9  jurisdiction over parties, whether found within or outside this state, to the maximum

10 extent permitted by the Constitution of this state and the Constitution of the United

11 States." Ariz. R. Civ. P. 4.2(a). "Because the [state] Constitution imposes no greater

12 restriction than does the U.S. Constitution, federal courts in [Arizona] may exercise

13 jurisdiction to the fullest extent permitted by due process." *Scott v. Breeland*, 792 F.2d

14 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280,

15 1285 (9th Cir. 1997)). Thus, the due process analysis under Arizona state law and federal

16 law is the same.

17         Due process requires that a nonresident defendant have sufficient "minimum

18 contacts" with the forum state such that the exercise of jurisdiction "does not offend

19 traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

20 U.S. 310, 316 (1945) (internal quotations and citation omitted). "The party seeking to

21 invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists."

22 *Scott*, 792 F.2d at 927 (citing *Data Disc, Inc.*, 557 F.2d at 1285). Analysis of whether the

23 Court has specific jurisdiction[2] over the nonresident defendant requires a three-pronged

24 test:

25                 (1) The non-resident defendant must purposefully direct [its]
                   activities or consummate some transaction with the forum or
26                 resident thereof; or perform some act by which [it]

27 _____

28         [2] There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.5 (1985). Only specific jurisdiction is at issue here. *See* Doc. 102 at 3.

1

2

3

4

> purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

5

6

7

8

9

10

11

12

13

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs two of the test." *Id.* (citation omitted). "'Purposeful availment' and 'purposeful direction' are distinct tests, the former to be applied to contract claims and the latter to tort claims." *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Properties, Ltd.*, 226 Ariz. 262, 266 (2011). "For tort claims, the court considers whether the defendant 'purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof.'" *Id.* at 267 (quoting *Schwarzenegger*, 374 F.3d at 802).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott*, 792 F.2d at 927 (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "If the district court decides the motion without an evidentiary hearing . . . 'then the plaintiff need only make a prima facie showing of the jurisdictional facts.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Uncontroverted allegations in the plaintiff's complaint must be taken as true" and "'[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800). However, "[t]he mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a nonresident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)).

III.        GET AIR, LLC'S MOTION TO DISMISS

To overcome Defendant Get Air, LLC's motion to dismiss, Plaintiff must show that Get Air, LLC "purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof." *Planning Grp. of Scottsdale, L.L.C.*, 226 Ariz. at 266 (quoting *Schwarzenegger*, 374 F.3d at 802).

Get Air, LLC contends that this Court lacks personal jurisdiction over it because Get Air, LLC is a Utah limited liability corporation company whose only business prior to February 2016 was the operation of a trampoline park (Get Air Roy) in Roy, Utah. (Doc. 97 at 6). Get Air, LLC states that "[g]enerally, it has conducted no business in Arizona and, specifically, it was not involved in the design, construction or operation of the Get Air Tucson trampoline park in any way." *Id.* Get Air, LLC further argues that "there is no evidence that any member, manager, or employee of Get Air, LLC (i) drafted or created the Get Air, LLC Handbook with the knowledge or intent that it was to 'apply to trampoline park customers, including Get Air Tucson customers,' or (ii) 'supplied' the Get Air, LLC Handbook to Get Air Tucson." *Id.* at 7. In its supplemental memorandum, Get Air, LLC states that the jurisdictional discovery confirms that there is no evidence that Get Air, LLC conducted business in Arizona sufficient for this Court to exercise personal jurisdiction over it:

> [T]he additional discovery confirms (i) Amy Iverson, working as the Human Resources Director for Trampoline Parks, LLC prepared all versions of the Get Air, LLC Employee Handbook that have been identified in this case, (ii) those versions of the employee handbook were prepared as part of her work, on behalf of Trampoline Parks, LLC to prepare a generic handbook for Get Air trampoline parks, (iii) Jake Goodell, acting as a member of Get Air Tucson Trampoline, LLC, took copies of the Get Air, LLC Employee Handbook to Tucson in August 2013, (iv) Jessica Bybee's role in preparing an employee handbook for Get Air Roy park owned by Get Air, LLC ended in August 2012, before her employment ended in October 2013, (v) no one who owned or managed Get Air, LLC in 2013 was aware that Jake Goodell took a copy of the Get Air, LLC Employee Handbook from the Roy, Utah Park to be used in Tucson.

(Doc. 155 at 2–3).

Plaintiff argues that there are sufficient minimum contacts in this case to support personal jurisdiction based on Get Air, LLC allegedly disseminating the EH to Get Air Tucson. (Doc. 102 at 4). Specifically, Plaintiff notes that in its original motion to dismiss, Get Air, LLC included affidavits from Val Iverson and Jacob Goodell stating that the EH was created by Jessica Bybee as a manager for Get Air, LLC, and that Get Air Tucson used the EH to provide standard employment information but not for safety procedures. (Doc. 102 at 7–8). Then, Plaintiff notes, in its second motion to dismiss, Get Air, LLC changed its argument to claim that the EH used by Get Air Tucson was actually created by Amy Iverson on behalf of Trampoline Parks, LLC, not Get Air, LLC. (Doc. 102 at 2–3). In Plaintiff's supplemental memorandum, he contends that the EH used by Get Air Tucson was first developed by Jessica Bybee and then reviewed and edited by Amy Iverson, an independent contractor for Trampoline Parks, LLC, at the direction of Joan Iverson, a member of Get Air, LLC, and that Amy admitted that the work she did was for Get Air, LLC, not Trampoline Parks, LLC. (Doc. 154 at 5). Plaintiff also questions why, if the EH was allegedly produced by Amy on behalf of Trampoline Parks, LLC, the EH is called the "Get Air, LLC Employee Handbook" and refers to Get Air, LLC throughout the document. (Doc. 102 at 12). Plaintiff further notes that Jacob Goodell testified that the EH he brought to Tucson came directly from Get Air, LLC. (Doc. 154 at 6). Plaintiff contends that it does not matter who created the EH used by Get Air Tucson, or what version of the EH Get Air Tucson used, because "either way, it came directly from, and was a product of, Get Air, LLC." (Doc. 154 at 9).

## A. Affidavits

In its first motion to dismiss, Get Air, LLC included affidavits from Val Iverson and Jacob Goodell stating that the Get Air, LLC EH was created by Jessica Bybee in her capacity as manager and on behalf of Get Air, LLC. (Doc. 43 at 13 ¶ 11; 40 ¶ 11). Jacob Goodell further stated that Get Air Tucson used the Get Air, LLC EH to provide standard employment information to its employees, but did not use it as a way to train its employees on safety procedures. (Doc. 43 at 40 ¶¶ 14, 16). Get Air, LLC stated that

"[a]lthough there is evidence that the operators of the Get Air Tucson trampoline park adopted and used Get Air Roy's employee manual as the Get Air Tucson employee manual, there is no evidence that any member of Get Air, LLC knew or intended Get Air Tucson would use its employee manual as Get Air Tucson's employee manual." (Doc. 43 at 5). Thus, the essence of Get Air, LLC's first motion to dismiss was that while Get Air, LLC created the EH, it did not know that Get Air Tucson was going to use it, and that even so, Get Air Tucson did not use the EH to train its employees on safety procedures.

In its second motion to dismiss, Get Air, LLC presents a new argument: the EH used by Get Air Tucson was not created by Get Air, LLC, but by Amy Iverson, a contractor for Trampoline Parks, LLC, and the EH was provided to Get Air Tucson by Trampoline Parks, LLC. (Doc. 97 at 7). Get Air, LLC further states that Amy Iverson prepared the EH using a version of the EH previously prepared by the manager of Get Air Roy, Jessica Bybee.[3] *Id.* The second motion to dismiss includes a new affidavit from Val Iverson, wherein he states that "[n]either my wife nor I, as the sole members of Get Air, LLC, directed or authorized any manager, employee or agent of Get Air Roy to provide a copy of the Get Air, LLC Handbook to any member of Get Air Tucson, LLC or any manager or employee of Get Air Tucson." (Doc. 97 at 13 ¶ 17). Val Iverson states that he had no idea Get Air Tucson was using the EH until this lawsuit was filed, and that Get Air, LLC had no role in Get Air Tucson obtaining and using the EH. *Id.* at ¶¶ 19–22. Jacob Goodell's new affidavit states that "[i]n her capacity as manager of Get Air Roy, Jessica Bybee prepared the original Get Air Roy employee handbook and used the Get Air, LLC Employee Handbook," but notes that Jessica's employment with Get Air, LLC at Get Air Roy ended before Get Air Tucson hired any employees or managers. (Doc. 97 at 21 ¶¶ 14–15). Jacob further states that Val Iverson was not involved in Get Air Tucson

---

[3] Val Iverson states that "[d]uring her employment with Get Air, LLC at Get Air Roy, Ms. Bybee's responsibilities and authority would have included use of the Get Air, LLC Employee Handbook . . . [but that she] never had the authority to direct the managers or employees of any other Get Air entity or Get Air facility to use or follow the Get Air, LLC Handbook." (Doc. 97 at 13 ¶ 16). Jacob Goodell makes the same statement in his affidavit. *Id.* at 21–22 ¶ 14.

1    obtaining or using the EH, and that any decision to use the EH was made by management

2    of Get Air Tucson. *Id.* at ¶¶ 16–18.

3         Get Air, LLC's second motion to dismiss also includes an affidavit from Amy

4    Iverson, who states that she worked as an independent contractor for Trampoline Parks,

5    LLC and served as its Director of Human Resources from autumn 2012–autumn 2013.

6    (Doc. 97–1 at 2 ¶ 3). In her capacity as Director of Human Resources for Trampoline

7    Parks, she "develop[d] a generic Employee Handbook that could be used at any

8    trampoline park that was operated by a Get Air business entity, including Get Air

9    Tucson." *Id.* at ¶ 7. Amy explained that:

10            This version of the Get Air, LLC Handbook [dated 5/16/13]
              was prepared as a part of my work for Trampoline Parks and,
11            although it is based upon the Get Air Roy employee
              handbook that was first prepared by the manager of Get Air
12            Roy [Jessica Bybee], it is not the original Get Air Roy
              employee handbook.
13

14   *Id.* at ¶ 8. Amy further states that this new, generic EH was provided to personnel at Get

15   Air Tucson "as part of Trampoline Parks' support work." *Id.* at ¶ 9. Amy also prepared

16   PowerPoint slides in 2013 on employee and management training that Trampoline Parks,

17   LLC provided to Get Air Tucson, and states that the PowerPoints refer to yet another

18   version of the EH and not the Get Air, LLC EH.[4] *Id.* at ¶¶ 10–11.

19                    **B. Deposition Testimony**

20        Following the Court's order allowing additional jurisdictional discovery in this

21   matter, the parties submitted supplemental briefs with transcripts of the depositions.

22        Val Iverson testified that during the time period of Blake's injury, Trampoline

23   Parks, LLC's business was manufacturing trampoline parks, and Get Air, LLC's business

24   was a trampoline park in Roy, Utah. (Doc. 154 Ex. 2 at 18:7–19:7). In 2013, his wife,

25   Joan Iverson, was helping him run Get Air, LLC; the "Get Air leadership team" refers to

26   himself and his wife; Joan and Val Iverson were the only two members of Get Air, LLC

27

28        [4] As support for this argument, Amy notes that the PowerPoints refer to safety
          rules being on page 12 of the EH, while the safety rules in the Get Air, LLC EH dated
          5/16/13 are on page 13.

in 2013. *Id.* at 26:6–8; 31:8–14; 54: 21–23. Joan was never an employee of Trampoline Parks, LLC. *Id.* at 31:18–21. He does not remember himself or his wife giving Amy Iverson the assignment to review the EH. *Id.* at 21:1–11. Amy was an independent contractor and drafted items that he needed. *Id.* at 34:4–9. He did not know that Amy drafted an EH based on the one Jessica created; he does not remember discussing an EH with Jessica or giving her a list of safety rules to put in the EH; he does not remember meeting with Amy, Joan, and Jessica about the EH. *Id.* at 51:15–23; 53:1–17; 65:4–8; 66:2–5; 93:1–16. Val does not know of an EH that just says "Get Air" and not "Get Air, LLC;" when they first opened, they had a 2–3 page pamphlet but he does not know if Get Air, LLC was on it. *Id.* at 46:18–22; 61:1–8. He does not know if there is a Trampoline Parks, LLC EH. *Id.* at 61:21–23. Val did not learn that Get Air Tucson was using the EH until this lawsuit was filed. *Id.* at 47:3–15; 48:23–49:3. The first time he saw any version of the EH was when attorney David Bell showed him a few days prior to the deposition. *Id.* at 72:1–9. He does not recall seeing one when he signed his affidavits. *Id.* at 72:10–13. Val stated that he did not know anything about the operations of Get Air Tucson; his "total involvement" was building and investing in the park. *Id.* at 43:10–13.

Jessica Bybee[5] testified that the version of the EH that Get Air Tucson had was not the version she created; she never finished a version of the EH. (Doc. 154 Ex. 4 at 11:25–12:2). Val Iverson gave her the assignment to work on the EH. *Id.* at 14:12–14; 15:21–23. Val went to a conference with other trampoline makers and they had rules they wanted to incorporate for the trampoline parks, so Val asked her to make sure the EH included those rules. *Id.* at 15:25–16:6. Val gave her a written list of safety rules to use. *Id.* at 17:24–18:2. She created an EH but did not finish it; it was still being evaluated by Val and then she gave it to Amy Iverson to finish. *Id.* at 16:22–17:2; 21:17–20. Her understanding was that Amy "was going to write the handbook professionally." *Id.* at 17:8–9. Jessica had a meeting with Amy, Val, and Joan where they talked about the EH

---

[5] Jessica was employed by Get Air, LLC as the manager of Get Air Roy. (Doc. 154 Ex. 4 at 12–13).

and Jessica gave it to Amy. *Id.* at 30:12–17. Joan Iverson did not have any involvement in Jessica's work on the EH. *Id.* at 21:8–10. The version Jessica created had safety rules in it; the rules were the rules that were in the safety video that employees were supposed to follow. *Id.* at 17:14–20. When shown the EH dated 5/16/13, Jessica stated that the first half looked familiar to her, but the second half, starting on page 13, was not what she started making; a lot had been added or taken away. *Id.* at 19:7–11. Some but not all of the safety rules on page 13 looked familiar to her as the list that Val gave her. *Id.* at 19:19–22. Jessica put the title "Get Air, LLC Employee Handbook" on the version she created; no one discussed the accuracy of the title with her; she made it for the Roy park. *Id.* at 24:19–25. Jessica does not recall seeing a version of the EH without "Get Air, LLC" on it. *Id.* at 25:9–11. Amy took the EH and expanded it to all of the parks. *Id.* at 25:2–5. Jessica does not recall being told that the EH she developed was going to be used at other Get Air parks, but her understanding was that it would be once Amy took over. *Id.* at 32:15–25.

Amy Iverson testified that she did work for Get Air, LLC during the time period of autumn 2012–autumn 2013; when Val and Joan Iverson asked her to help them, she did. (Doc. 154 Ex. 1 at 22:19–23:5; 27:23). They asked her to read their EH and she revised it to use in other parts of the business. *Id.* at 23–24; 28:1–3. The EH dated 5/16/13 was not what she got from Val and Joan Iverson to review, it was a different version. *Id.* at 29:19–25. The version she was given to review was a completed version, drafted by Jessica Bybee, and Amy got it in late 2012. *Id.* at 30:7–11; 31:1–3. She does not know if the version she got from Jessica had safety rules in it. *Id.* at 69:21–23. Amy does not know what version of the EH was provided to Get Air Tucson. *Id.* at 36:5–9; 48:20–23. She has no knowledge of how the EH got to Tucson, but the version Get Air Tucson had would have been created by her. *Id.* at 43:22–44:3. She has a version of the EH where the safety rules are on page 12 on her computer; she was not asked to produce it for this lawsuit. *Id.* at 52.[6] The EH dated 2/7/13 was created by Amy; this is the one she refers to as the

---

[6] The EH dated 5/16/13 has safety rules on page 13, and the California Edition EH

generic version and was produced by her to be used at any of the Get Air facilities. *Id.* at 55:11–17. There are additional versions of the EH, she does not know how many; when a new park opened, it would get the updated version of the EH. *Id.* at 56:4–14; 57:17–21. Amy disagreed that if the EH ended up at Get Air Tucson, it would have come from Get Air, LLC. *Id.* at 58:23–59:2. She stated that the EH came from Trampoline Parks, LLC and that it was an error on her part to put the name "Get Air, LLC" on the EH. *Id.* at 59:3–7; 60:2–4. If she corrected the EH, it would just say "Get Air." *Id.* at 60:9–17. Amy explained that all of the work she did was Trampoline Parks, LLC work, but then when asked about the work she did for Get Air, LLC, Amy stated: "I guess the confusion lies in that, in my mind, it was all the same thing. I worked for my father-in-law [Val Iverson], and he gave me some assignments and I did them." *Id.* at 85:14–24. She would never have said that she was an employee of Get Air, LLC, and she was paid by Trampoline Parks, LLC, but she created the EH at the request of Val Iverson, and revised it over the years as people requested. *Id.* at 86:1–14; 89:23–90:1.

Jacob Goodell testified that he did not know which version of the EH made its way to Get Air Tucson, but he is the one who took it there. (Doc. 154 Ex. 5 at 25:19–22). He walked over to Get Air Roy and asked them for the manual they were using, then he had it reprinted and took it to Tucson.[7] *Id.* at 27:17–23. He took the EH to Get Air Tucson so the employees would have an EH to go by and have rules of conduct and know how to be good employees. *Id.* at 28:1–8. He felt it was the best thing to train his employees on without having to rewrite and make his own EH. *Id.* at 86:22–87:2. If there was a Trampoline Parks, LLC EH, he would not have taken it to Tucson because Trampoline Parks, LLC employees do very different jobs because they are basically construction workers, not customer service people or deck attendees.[8] *Id.* at 28:20–29:3.

---

has safety rules on page 16. At this point in the deposition, Mr. Bell provided another version of the EH dated February 7, 2013, with the safety rules on pages 11 and 12.

[7] Jacob later stated that he "went over to Get Air Roy or Get Air, LLC and requested that they give me one." *Id.* at 55:3–5.

[8] The people on top of the deck at the trampoline park

- 13 -

Jacob stated that as best he can remember, employees at Get Air Tucson were not trained on safety rules using the EH; when he was there, they did not go over the EH page by page or review it with employees during training; he did the training and asked the employees to take a copy of the manual when they left. *Id.* at 34:6–35:6. Jacob knows that Val and Joan asked Amy to review the EH prepared by Jessica. *Id.* at 50:18–23. He knew that Amy was revising the Get Air, LLC EH so that Trampoline Parks could use it for future parks. *Id.* at 87:13–17. He does not know how much work Jessica did on the EH, he does not remember if the version she prepared had safety rules in it, and he does not know what changed in the version Amy prepared. *Id.* at 79:8–10; 80:3–14. He does not know if Amy added the safety rules. *Id.* at 80:25–81:2. Jacob stated that Jessica could not have created the EH dated 5/16/13 because her employment ended prior to that; his statement in his second affidavit that Jessica prepared the version darted 5/16/13 is an error. *Id.* at 84:16–85:9. He has never asked anyone to take the "Get Air, LLC" name off the EH. *Id.* at 71:3–6.

Elyana Garcia, a former employee of Get Air Tucson who was working on the date of Blake's injury, testified that she was shown the EH during her training:

> [T]he first thing I saw was the handbook. They had us go through it. They flipped through it, reviewed it with us, and then moved on with the process. . . . when I was doing the training she[9] skimmed through it, told us what was allowed, what wasn't. I never actually held it in my hand or seen it with my own eyes.

(Doc. 154 Ex. 3 at 38:22–24; 39:6–9). Elyana remembered being shown the list of safety rules in the EH. *Id.* at 39:15–40:6. When shown the EH dated 5/16/13, Elyana stated that it looked familiar to her but she had not paid attention to the date of the document during her training. *Id.* at 39:1–6. The EH was not available to her to review, it was just something that the trainer skimmed through with her and checked off as she completed her training. *Id.* at 45:1–6.

Scott Hansen, a former employee of Get Air Tucson, testified that he received an

---

[9] Alicia Durfee, manager at Get Air Tucson.

- 14 -

1   EH when he started, around August 31, 2015. (Doc. 154 Ex. 6 at 31:3–12). He only

2   received one copy; he does not recall the date on it, but he still has the EH.[10] *Id.* at 31:22–

3   24; 32:4–8.

4         **C. Analysis**

5         Because the motion to dismiss is based on written materials, Plaintiff's burden is

6   to make a prima facie showing of jurisdictional facts by affidavit or otherwise.

7   *Schwarzenegger*, 374 F.3d at 800; *Scott*, 792 F.2d at 927. Plaintiff argues that he has

8   made the necessary showing here because "[a]t the very least, there remains a factual

9   dispute, which must be resolved in Plaintiff's favor." (Doc 102 at 16). The Court agrees.

10   While Amy Iverson testified that she was only employed by Trampoline Parks, LLC, she

11   also testified that she did work for Get Air, LLC, and that Val and Joan Iverson, the sole

12   members of Get Air, LLC, gave her the assignment to work on the Get Air, LLC EH.

13   There is no testimony that Trampoline Parks, LLC asked Amy to create the Get Air, LLC

14   EH, nor would this be logical because Trampoline Parks, LLC was in the business of

15   designing and constructing trampoline parks, and as such its business would not include

16   the day to day operations of running a trampoline park. While there is testimony from

17   Amy and Jessica that, in retrospect, the EH should have been titled "Get Air EH" instead

18   of "Get Air, LLC EH," there is no explanation as to why the name "Get Air, LLC" was

19   never removed from the EH, or why no one ever directed Amy or Jessica to change the

20   name. Further, there is testimony from Amy, Jessica, and Jacob that Amy's role in

21   revising the EH was to make it applicable to other Get Air parks, not just the park in Roy,

22   Utah run by Get Air, LLC. This supports a finding that Get Air, LLC purposefully

23   directed its activities at Arizona by creating a generic EH with the specific intent that it

24

25         [10] Plaintiff's counsel, Mr. Dwyer, subpoenaed Scott for a copy of the handbook.
Scott was directed by Mr. Bell to send it to Mr. Bell's office, and then Mr. Dwyer did not

26   receive it until November 22, 2016. The version produced is titled "Get Air, LLC
Employee Handbook California Edition" and is dated "Revised 9/10/13." *See* Doc. 154 at

27   4. If this version was revised on 9/10/13, then Scott could not have received it on August
31, 2013 when he started working at Get Air Tucson. Plaintiff's injury occurred on

28   September 8, 2013. Of the three versions of the EH that have been produced thus far, the
safety rules are substantially the same. (The California edition, the 2/7/13 edition, and the
5/16/13 edition).

would be used at other Get Air parks. In addition, Jacob testified that he took the EH from "Get Air Roy or Get Air, LLC," underscoring the confusion by the parties in this case as to whether Get Air Roy and Get Air, LLC were separate entities or one and the same. Likewise, Amy testified that she was confused about whether her work was for Trampoline Parks, LLC or Get Air, LLC because "in my mind, it was all the same thing;" she was given assignments by Val and did what he needed her to do.

Even if Val Iverson did not have personal knowledge that the EH was taken from Get Air Roy/Get Air, LLC to Get Air Tucson, it is clear from the testimony before the Court that Val and Joan Iverson's intent in having Amy Iverson revise the EH was to create a generic version of the EH to be used at other Get Air parks, not just Get Air Roy. Thus, it is conceivable and foreseeable that the Get Air, LLC EH would make its way to other parks in other states, including Get Air Tucson.

Furthermore, Val Iverson did have personal knowledge that the Get Air park was being built in Tucson because he was an investor and developer in Get Air Tucson. At the time of Blake's injury, Val Iverson was a member of Get Air, LLC, a member of Trampoline Parks, LLC, and an investor in Get Air Tucson Trampolines, LLC. (Doc. 97 Ex. 1; Doc. 154 Ex. 2 at 9:22–24).[11] All of these companies are closely connected to Val Iverson. While Mr. Iverson is not being sued in this matter in his individual capacity, it is clear from the evidence before this Court that through his ties to the various corporate entities, he was specifically involved in developing and investing in Get Air Tucson, and directed Amy Iverson and Jessica Bybee to prepare a generic EH that could be used at all Get Air parks. This is sufficient to find that Get Air, LLC purposefully directed its activities to Arizona such that this Court may exercise personal jurisdiction over it.

Finally, to the extent that Val Iverson claims that he does not recall any meetings with Jessica or Amy where he directed them to create an EH, the Court finds that this testimony is undermined by the testimony from Amy and Jessica. Even Jacob testified

---

[11] A registered principals Utah business search dated 7/18/14 also lists Val Iverson as a member of Get Air Tucson Trampolines, LLC. (Doc. 154 Ex. 2 at 10:14–21).

1    that he knew that Val and Joan asked Amy to review the EH prepared by Jessica, and that

2    Amy's purpose in revising the EH was so that it could be used for future parks. Conflicts

3    in the testimony must be resolved in the plaintiff's favor, and here the Court finds that the

4    weight of the testimony supports a finding that Val and Joan Iverson, the sole members of

5    Get Air, LLC, directed Amy Iverson to revise the EH drafted by Jessica Bybee and create

6    a generic Get Air, LLC EH to be used at future Get Air parks.

7         As to the last two prongs of the personal jurisdiction test, the Court finds that it is

8    clear that Plaintiff's claims arise out of and relate to Get Air, LLC's contacts with

9    Arizona because Plaintiff's claims against Get Air, LLC are based on the allegedly

10   defective safety rules in the EH. The Court further finds that Get Air, LLC has had

11   sufficient minimum contacts with Arizona such that this Court's exercise of jurisdiction

12   over it is reasonable.[12]

13   **III. RECOMMENDATION**

14        Accordingly, the Magistrate Judge RECOMMENDS that the District Court enter

15   an order DENYING Get Air, LLC's Motion to Dismiss. (Doc. 97).

16        Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections

17   within fourteen days after being served with a copy of this Report and Recommendation.

18   A party may respond to another party's objections within fourteen days after being served

19   with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*.

20   If objections are not timely filed, then the parties' rights to de novo review by the District

21   Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

22   (9th Cir. 2003) (en banc).

23   . . .

24   . . .

25   . . .

26

27   ---

     [12] At the third prong, "the burden then shifts to the defendant to 'present a
28   compelling case' that the exercise of jurisdiction would not be reasonable."
     *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp.*, 471 U.S. 476–78). Get
     Air, LLC makes no such argument here.

1    Dated this 13th day of February, 2017.

2

3

4

5    Eric J. Markovich
     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28