**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blake Haines,<br><br>        Plaintiff,<br><br>v.<br><br>Get Air LLC,<br><br>        Defendant. | No. CV-15-00002-TUC-RM (EJM)<br><br>**REPORT AND RECOMMENDATION** |

This personal injury action involves a dispute between the Plaintiff, Blake Haines, and Defendant Get Air, LLC ("GALLC"). Haines was injured while performing a flip at Get Air Tucson, an indoor trampoline park, and is now a quadriplegic. Haines alleges GALLC produced a defective Employee Handbook ("EH") used by Get Air Tucson.

Pending before the Court is GALLC's Motion for Summary Judgment. (Doc. 238). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned for a Report and Recommendation. (Doc. 25). The motion has been fully briefed by the parties, and the Court heard oral arguments on July 16, 2018. For the reasons stated below, the Magistrate Judge recommends that the District Court enter an ordering granting GALLC's Motion for Summary Judgment as to Plaintiff's punitive damages claim only, and denying GALLC's motion as to the remainder of Plaintiff's claims.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On September 8, 2013 Haines was at the Get Air Tucson indoor trampoline park

and performed a move where he flipped multiple times off of a platform and into a foam pit. (Doc. 12 at 9). Haines "suffered catastrophic injuries from the maneuver, including fractured cervical vertebrae resulting in paralysis." *Id*. Following this incident, Haines filed suit in Pima County Superior Court on September 5, 2014 against the following defendants: Get Air Tucson, Inc.; Get Air Tucson Trampolines, LLC; Get Air Management, Inc.; GALLC; Trampoline Parks, LLC; Patti Goodell; Jacob Goodell; Kiersten Goodell; Scott Goodell; Alan McEwan Jr.; Val Iverson, individually and as owner or operator of Trampoline Parks, LLC; Jane and/or John Does #s 1-20; ABC Corporations 1-10; XYZ Partnerships 1-10; and ABC Limited Liability Corporations (LLCs) 1-10. (Doc. 6 Ex. 1). Haines alleged claims for negligence, negligent design, negligence in safety standards, negligent supervision, negligent hiring and training of personnel, piercing the corporate veil, and punitive damages. *Id*.

On January 5, 2015, Defendant Get Air Tucson Trampolines, LLC removed the case to this Court, alleging all parties were diverse and the amount in controversy exceeded $75,000.00. (Doc. 1 at 1–2). Get Air Tucson Trampolines, LLC did not indicate whether any of the other defendants joined or consented to the removal.

On January 13, 2015, Haines filed a Notice of Filing Amended Pleading Pursuant to LRCiv 15.1(b), averring that no defendant had filed an answer to his original Complaint. (Doc. 8). Haines' First Amended Complaint named Alicia Durfee and Scott Hansen as additional defendants, and alleged Durfee was a manager or supervisor at Get Air Tucson, and Hansen was an employee who was acting as a de facto manager at the time of Haines' injury. (Doc. 12 at 5–6).

On January 23, 2015, Haines filed a Motion to Remand to State Court. (Doc. 17). Haines alleged two arguments in his motion: One, the federal court lacked subject matter jurisdiction because there was not complete diversity among the parties, and two, removal was procedurally improper because the removing party did not establish unanimity among all served defendants for removal. *Id*. at 1–2. Get Air Tucson Trampolines, LLC and the Goodell, Durfee, and Hansen defendants counter argued that

Haines' addition of Hansen and Durfee as parties was a "thinly veiled attempt to avoid federal jurisdiction." (Doc. 19 at 1).

Following oral arguments on the Motion to Remand, the Court granted the Motion on April 15, 2015 and remanded this matter back to Pima County Superior Court. (Doc. 31). The Court concluded that the case was improperly removed to federal court because all properly served defendants had failed to join or consent to the removal, and because Haines properly added Hansen and Durfee as defendants in his FAC, which destroyed the Court's diversity jurisdiction.

Following remand, the Plaintiff and several defendants entered into a settlement agreement. The Superior Court then dismissed the defendants who were parties to the settlement agreement, leaving two remaining defendants: GALLC and Quality Foam & Fiber Products, Inc. (Doc. 32 Ex. 3).

On June 12, 2015 GALLC removed the case to this Court, alleging that all parties were diverse due to the Superior Court's dismissal of the non-diverse defendants, and that the amount in controversy exceeded $75,000.00. (Doc. 32 at 1–2). Defendant Quality Foam & Fiber Products, Inc. filed a notice consenting to and joining in the notice of removal. (Doc. 35). On July 2, 2015, the Court issued an order directing the Clerk to reopen the case and to recognize Plaintiff's Second Amended Complaint (filed in Superior Court) as the operative complaint in this matter. (Doc. 39).

On July 30, 2015 GALLC filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a cause of action pursuant to Fed. R. Civ. P. 8 and Rule 12(b). (Doc. 43). On August 25, 2015 Plaintiff filed a Motion for Leave to Amend Complaint to add and clarify allegations specific to GALLC, and to add Pacific Urethanes, LLC as a products liability defendant. (Doc. 45). On February 8, 2016 the District Court entered an Order adopting the undersigned's Report and Recommendation, granting Plaintiff's Motion to Amend and denying GALLC's Motion to Dismiss as moot. (Doc. 83).

On February 8, 2016 Plaintiff filed his Third Amended Complaint ("TAC"), which

named Pacific Urethanes, LLC as an additional products liability defendant. (Doc. 84). The TAC also alleged that GALLC developed defective safety rules and supplied them to Get Air Tucson.

On March 1, 2016 GALLC filed a Motion to Dismiss for lack of personal jurisdiction, arguing that it had not engaged in any business in Arizona and that there were no facts supporting general or specific personal jurisdiction over it. (Doc. 97). On March 31, 2017 the District Court entered an Order adopting the undersigned's Report and Recommendation and denying GALLC's Motion to Dismiss. (Doc. 172).

On April 15, 2016 Defendant Pacific Urethanes, LLC filed a Motion to Dismiss for lack of personal jurisdiction. (Doc. 103). On March 21, 2017 the District Court entered an Order adopting the undersigned's Report and Recommendation and granting Pacific Urethane's Motion to Dismiss. (Doc. 167).

On September 19, 2017 the Court held a Status Conference with Plaintiff and GALLC to resolve a dispute regarding the procedural posture of the case. At that time, Plaintiff believed the case was ready for trial, and GALLC still had not filed its initial disclosure statement and believed a discovery schedule needed to be set. Following the status conference, the undersigned issued a Revised Scheduling Order. (Doc. 191).

On September 27, 2017 the District Court entered an Order dismissing Pacific Urethanes with prejudice, and on October 11, 2017 the Court entered an Order dismissing Quality Foam & Fiber with prejudice. (Docs. 193 & 195).

On November 3, 2017 Mid-Continent Excess & Surplus Insurance Company filed a Motion to Intervene. (Doc. 199). On December 8, 2017 Mid-Continent filed a Motion for Leave to File Complaint in Intervention and Proposed Complaint. (Docs. 210 & 211). Mid-Continent's motion is currently stayed. (Docs. 213 & 219).

On April 16, 2018 GALLC filed its first Motion for Summary Judgment. (Doc. 238).

**II.      STANDARD OF REVIEW**

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, a "genuine" issue means that a reasonable jury could find in favor of the non-moving party. *Id*. Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

"Initially, a party moving for summary judgment has the burden of showing there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law." *National Bank of Arizona v. Thruston*, 218 Ariz. 112, 114–15 (App. 2008). "Only if the moving party satisfies this burden will the party opposing the motion be required to come forward with evidence establishing the existence of a genuine issue of material fact that must be resolved at trial." *Id.* at 115. The non-moving party "may not rest upon mere allegations or denials of [the moving party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

"The burden of persuasion on the summary judgment motion is heavy. Where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *National Bank of Arizona*, 218 Ariz. at 116 (internal quotations and citation omitted). In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249; *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

**III.     GALLC'S MOTION TO DISMISS**

GALLC contends that it is not liable to Plaintiff because:

> 1) assuming, for purposes of this motion and for purposes of this motion only, that GALLC owed a duty, and that plaintiff's expert's opinion is admissible, his opinion, that the rule that he alleges should have been in the employee handbook (EH) is, in fact, in the EH on the page the rules appear; 2) GALLC owed plaintiff no duty; 3) the GALLC employee involved with the creation of the EH has been dismissed with prejudice and under Arizona law, GALLC no longer has any potential legal liability; 4) there is no causal connection between any action GALLC took and plaintiff's injury; and 5) plaintiff's claim for punitive damages is factually unsupported.

(Doc. 238 at 1–2).

**A. Employee Handbook**

GALLC first argues that it is not liable because Plaintiff alleges that the EH was defective because it did not include a rule prohibiting flips, but the EH does include a rule against somersaults, which GALLC contends includes the maneuver Plaintiff attempted—a triple flip. Thus, GALLC states that if it did owe Plaintiff a duty to have a rule prohibiting the conduct that caused Plaintiff's injury, then it fulfilled that duty with the "no somersaults" rule. GALLC further argues that the plain meaning of "somersault" is a question of law for the Court to decide.

Plaintiff contends that "somersault" and "flip" have different meanings, and notes that this is the first time in the nearly four years since this lawsuit was filed that Defendant has said that Plaintiff's triple flip was actually a somersault and therefore covered by the rule in the EH. In support of his argument, Plaintiff notes the following: Get Air Tucson employees testified that flips and multiple flips were allowed; the common, lay-person definition of somersault is something that is done on the ground; the rule list hanging on the wall of the Get Air Tucson facility said "no somersaults" and "perform flips at your own risk;" and the Trampoline Parks, LLC owner's manual also distinguished between somersaults and flips, and specifically prohibited double, triple,

and quadruple flips into the foam pits.[1]

Taking the evidence in the light most favorable to Plaintiff, the undersigned finds that it is a question of fact for the jury to decide whether the plain meaning of "somersault" encompasses the triple flip maneuver attempted by Plaintiff. While Defendant cites case law for the proposition that the Court may decide the plain meaning of a term as a matter of law, those principals govern the interpretation of statutes and contracts and are not applicable to the present matter. Though the various articles and dictionary definitions put forth by Defendant might seem to encompass "flip" in the definition of "somersault," in common everyday speech and understanding, these two terms may well refer to two different things. This conclusion is further underscored by the fact that the list of rules displayed at Get Air Tucson had one rule that specifically said "DO NOT ATTEMPT SOMERSAULTS" and a separate rule that said "FLIPS AND OTHER TRICKS ARE DANGEROUS . . . PERFORM AT YOUR OWN RISK ONLY IF YOU HAVE SUFFICIENT SKILL TO AVOID INJURY" (Doc. 246 Ex. 1). If these two moves are in fact the same, as GALLC contends, then it would simply not make sense to have two separate and contradictory rules. Moreover, Get Air Tucson employees—the individuals responsible for overseeing customers and implementing the safety rules—testified that flips and multiple flips were allowed, which is consistent with the rule permitting flips "at your own risk," and further suggests that "somersault" and "flip" denote two different maneuvers. *See* Plaintiff's SSOF #2–4. Accordingly, the undersigned finds that a factual dispute exists as to the plain meaning of "somersault" as used in GALLC's EH, and whether the rule prohibiting somersaults in the EH was

---

[1] Plaintiff also objects to GALLC's statement of facts numbers 3–30, which consist of dictionary definitions, scholarly articles, and printouts from gymnastic organizations defining "somersault." Plaintiff objects based on insufficient foundation, lack of authentication, and inadmissible hearsay, and further argues that these documents are untimely because fact discovery closed on December 15, 2017. Defendant counters that all of the documents Plaintiff objects to were timely presented and are admissible because the Court may properly take judicial notice of dictionaries, learned treatises are not excluded as hearsay, and because printouts from webpages are properly authenticated when the proponent declares that they are true and correct copies.
   The undersigned declines to address the admissibility of these documents because they are not necessary to consider in reaching the conclusion that it is a question of fact for the jury to determine the meaning of the words "flip" and somersault."

sufficient to include the triple flip maneuver attempted by Plaintiff.

## B. Whether GALLC Owed Plaintiff a Duty

GALLC argues that as a matter of law, it did not owe Plaintiff a duty because there was no special relationship between the parties or a public policy reason to create such a duty. GALLC further states that the Arizona Supreme Court's recent decision in *Quiroz v. Alcoa, Inc.*, 243 Ariz. 560 (2018) makes clear that the Court may not consider foreseeability in determining whether a duty exists.[2]

Plaintiff counters that a duty based on a special relationship between a business and its customers exists here because: a reasonable jury could find that one of Defendant's primary functions was to provide support for the expansion of the Get Air business enterprise, the EH served as an important support document, the EH was taken from GALLC to Get Air Tucson, businesses have a duty to their customers, and Plaintiff was a customer; therefore, because Defendant was lending support to Get Air facilities including Get Air Tucson, it is undeniable that Defendant owed a duty to customers in Tucson. Alternatively, Plaintiff argues that there is a duty based on public policy because GALLC took it upon itself to develop training materials and supply them to Tucson for the benefit of Get Air customers.

"Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007) (internal quotations and citation omitted); *see also Guerra v. State*, 237 Ariz. 183, 185 (2015) ("Under Arizona's common law of negligence, 'duty' is 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" quoting *Ontiveros v. Borak*, 136 Ariz. 500, 508 (1983)). Whether

---

[2] The undersigned finds Defendant's argument on this point somewhat distracting. As Plaintiff notes in his response, he has never argued that GALLC's duty was based on foreseeability. And, even prior to the recent decision in *Quiroz*, the Arizona Supreme Court held in *Gipson v. Kasey*, 214 Ariz. 141, 144 (2007) and reaffirmed in *Guerra v. State*, 237 Ariz. 183, 185 (2015) that "[f]oreseeability of harm is not a relevant consideration in determining the threshold legal issue of whether a duty exists[.]" Thus, the *Quiroz* decision does not change the duty analysis in Arizona; it reaffirms what has already been the law.

- 8 -

a duty exists is a question of law for the Court to decide. *Gipson*, 214 Ariz. at 143. "The issue of duty is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered." *Id.* 145. Finally, "[w]hether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.*

"[D]uty in Arizona is based on either recognized common law special relationships or relationships created by public policy." *Quiroz*, 243 Ariz. at ¶ 14. "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id.* (quoting *Gipson*, 214 Ariz. at 145 ¶¶ 18–19 and citing Restatement (Second) of Torts § 323 (discussing duty based on negligent undertaking)). "Public policy creating a duty is based on our state and federal statutes and the common law . . . [and u]nlike duties based on special relationships, duties based on public policy do not necessarily require preexisting relationships." *Id.* at ¶ 15; *see also Stanley v. McCarver*, 208 Ariz. 219, 221–22 (2004) ("[W]hen public policy has supported the existence of a legal obligation, courts have imposed duties for the protection of persons with whom no preexisting 'relationship' existed."). Thus, "the proper inquiry is whether a *sufficient* relationship exists between the parties to make it reasonable, as a matter of public policy, to impose a duty." *Stanley*, 208 Ariz. at 222.

The existence of a special relationship based on a negligent undertaking is not, as Defendant argues, premised on foreseeability. *See* Doc. 263 at 5:4–11. As the court explained in *Quiroz*,

> A duty based on a negligent undertaking does not arise solely because a defendant committed an act that might harm someone. Rather, a duty based on a negligent undertaking exists when a person, who otherwise owed no duty to plaintiff, voluntarily agrees to provide services for another person; under such circumstances, the person assumes a duty to exercise reasonable care in providing those services.

243 Ariz. at ¶ 66 (citing Restatement (Second) of Torts § 323 and *Stanley*, 208 Ariz. at 223–24).

The undersigned finds that, as a matter of law, GALLC owed Plaintiff a duty to exercise reasonable care in developing the safety rules in the EH. This duty is based on the special business-customer relationship that was created when GALLC performed an undertaking to develop the EH as part of its support work for the Get Air entities.[3] As the record reflects, and as this Court has previously found,[4] the EH was originally created by

---

[3] *See* Doc. 172 at 5 (Judge Marquez's order noting that "the name 'Get Air, LLC Employee Handbook'—as well as language used in business plans and other documents created during the time period—supports a finding that the Iverson family used Get Air, LLC to support the expansion of the Get Air business prior to the creation of Get Air Management, LLC").

[4] For example, in the Report and Recommendation on GALLC's second motion to dismiss, the undersigned explained that:

> There is no testimony that Trampoline Parks, LLC asked Amy to create the Get Air, LLC EH, nor would this be logical because Trampoline Parks, LLC was in the business of designing and constructing trampoline parks, and as such its business would not include the day to day operations of running a trampoline park. While there is testimony from Amy and Jessica that, in retrospect, the EH should have been titled "Get Air EH" instead of "Get Air, LLC EH," there is no explanation as to why the name "Get Air, LLC" was never removed from the EH, or why no one ever directed Amy or Jessica to change the name. Further, there is testimony from Amy, Jessica, and Jacob that Amy's role in revising the EH was to make it applicable to other Get Air parks, not just the park in Roy, Utah run by Get Air, LLC. This supports a finding that Get Air, LLC purposefully directed its activities at Arizona by creating a generic EH with the specific intent that it would be used at other Get Air parks. In addition, Jacob testified that he took the EH from "Get Air Roy or Get Air, LLC," underscoring the confusion by the parties in this case as to whether Get Air Roy and Get Air, LLC were separate entities or one and the same. Likewise, Amy testified that she was confused about whether her work was for Trampoline Parks, LLC or Get Air, LLC because "in my mind, it was all the same thing;" she was given assignments by Val and did what he needed her to do.

> Even if Val Iverson did not have personal knowledge that the EH was taken from Get Air Roy/Get Air, LLC to Get Air Tucson, it is clear from the testimony before the Court that Val and Joan Iverson's intent in having Amy Iverson revise the EH was to create a generic version of the EH to be used at other Get Air parks, not just Get Air Roy. Thus, it is conceivable and foreseeable that the Get Air, LLC EH would make its way to other parks in other states, including Get Air Tucson.

> Furthermore, Val Iverson did have personal knowledge that

Jessica Bybee during her employment with GALLC, then revised by Amy Iverson on behalf of GALLC and at the direction of Joan and Val Iverson. While Defendant has repeatedly asserted that Amy worked as an independent contractor for Trampoline Parks, LLC and was not employed by GALLC, she provided assistance to GALLC on request

---

> the Get Air park was being built in Tucson because he was an investor and developer in Get Air Tucson. At the time of Blake's injury, Val Iverson was a member of Get Air, LLC, a member of Trampoline Parks, LLC, and an investor in Get Air Tucson Trampolines, LLC. (Doc. 97 Ex. 1; Doc. 154 Ex. 2 at 9:22–24). All of these companies are closely connected to Val Iverson. While Mr. Iverson is not being sued in this matter in his individual capacity, it is clear from the evidence before this Court that through his ties to the various corporate entities, he was specifically involved in developing and investing in Get Air Tucson, and directed Amy Iverson and Jessica Bybee to prepare a generic EH that could be used at all Get Air parks. This is sufficient to find that Get Air, LLC purposefully directed its activities to Arizona such that this Court may exercise personal jurisdiction over it.
>
> Finally, to the extent that Val Iverson claims that he does not recall any meetings with Jessica or Amy where he directed them to create an EH, the Court finds that this testimony is undermined by the testimony from Amy and Jessica. Even Jacob testified that he knew that Val and Joan asked Amy to review the EH prepared by Jessica, and that Amy's purpose in revising the EH was so that it could be used for future parks. Conflicts in the testimony must be resolved in the plaintiff's favor, and here the Court finds that the weight of the testimony supports a finding that Val and Joan Iverson, the sole members of Get Air, LLC, directed Amy Iverson to revise the EH drafted by Jessica Bybee and create a generic Get Air, LLC EH to be used at future Get Air parks.

(Doc. 158 at 15–17) (footnotes omitted). In her Order adopting the Report and Recommendation, Judge Marquez concluded that:

> In short, there is a factual dispute regarding whether Amy Iverson prepared a generic employee handbook on behalf of Get Air, LLC or Trampoline Parks, LLC. While there is evidence indicating she created the handbook while working as an independent contractor for Trampoline Parks, LLC, there is also significant evidence supporting a finding that she created it on behalf of Get Air, LLC at the request of the owners of Get Air, LLC. Judge Markovich appropriately resolved the factual dispute in Plaintiff's favor.

(Doc. 172 at 6).

from Val and Joan Iverson, the only two members of GALLC.[5] Thus, GALLC undertook the responsibility of creating safety rules to be implemented at Get Air parks for the benefit of customers such as Plaintiff. The undersigned finds that this is sufficient to create a duty based on a negligent undertaking and a business-customer relationship.[6]

### C. Dismissal of Val Iverson

GALLC correctly notes that Val Iverson was dismissed with prejudice by Pima County Superior Court. GALLC contends that Val Iverson was responsible for the creation of the EH, but because he has been dismissed from this action, GALLC cannot be held vicariously liable for his conduct. GALLC further states that it cannot be vicariously liable for Amy Iverson's conduct in drafting the EH because she was never an employee of GALLC and it had no control over her work.

---

[5] As Judge Marquez noted,

> Amy signed an affidavit stating that she prepared the employee handbook as part of her work for Trampoline Parks, LLC (Doc. 97-1), but she testified at her deposition that she prepared the handbook for Get Air, LLC on request from Val and Joan Iverson. (A. Iverson Dep. At 22:19-24:6, 27:21-28:3, 28:8-11.) Specifically, she testified that Val and Joan Iverson asked her to revise the handbook so that it could be used in a larger capacity as the Get Air business expanded. (*Id.* at 22:19-24:6.)

(Doc. 172 at 4–5).

In support of its motion for summary judgment, GALLC includes an excerpt from Amy's deposition wherein she testifies that she received her 1099 form for tax purposes from Trampoline Parks, LLC, but she also states that she did work for GALLC. (Doc. 239 Ex. 26 at 4).

[6] As an alternative argument, Plaintiff also alleges that a duty exists based on public policy. In Arizona "[p]ublic policy creating a duty is based on our state and federal statutes and the common law[,]" and "in the absence of a statute, we exercise great restraint in declaring public policy." *Quiroz*, 243 Ariz. at ¶¶ 15, 19. Arizona recognizes a cause of action for negligent performance of an undertaking based on § 323 of the Restatement (Second) of Torts. *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 137 (App. 2014). However, in *Quiroz*, the court noted that while a duty based on public policy can originate from case law or Restatement sections consistent with Arizona law, "even in those cases where we have mentioned 'social concerns' in relation to tort duties, we have ultimately premised the existence of a duty on a statute or a recognized special relationship." 243 Ariz. at ¶ 20 (citing *Stanley* as an example).

Here, it is not necessary for the Court to determine whether GALLC owed Plaintiff a duty based on public policy because the undersigned finds that a duty exists based on the special business-customer relationship created by GALLC's undertaking to develop the EH and supply it to other Get Air entities.

- 12 -

Plaintiff contends that the dismissal of Val Iverson does not preclude this action against GALLC because Plaintiff expressly did not release Val Iverson in his capacity as a member of GALLC. Plaintiff further notes that Val is not the only person associated with GALLC who had an active role in creating the EH and disseminating it to Get Air Tucson—specifically, the EH was originally drafted by Jessica Bybee during her employment with GALLC, and Amy Iverson edited the EH at the direction of Joan Iverson, GALLC's managing member.

Defendant's argument would perhaps make sense if Plaintiff were trying to sue Val Iverson again individually after he was already dismissed from this action. However, Plaintiff's TAC alleges that GALLC, not Val Iverson, was negligent. Further, Plaintiff's theory of liability is based on piercing the corporate veil, not vicarious liability—Plaintiff's TAC alleges that GALLC was independently negligent, and further that GALLC is the alter ego of Val Iverson and therefore Plaintiff is entitled to recover damages from Val Iverson personally for GALLC's malfeasance, nonfeasance, and negligence. (Doc. 84 at 17–18).[7]

As to GALLC's vicarious liability argument, GALLC alleges that because Jessica Bybee testified that she was given the rules by Val, she was "a scrivener, not an author,"

---

[7] "As a general matter, under Arizona law, '[t]he corporate fiction will be disregarded when the corporation is the alter ego of the business conduit of a person, and when to observe the corporation would work an injustice. The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist.'" *Marlyn Nutraceuticals, Inc. v. Improvita Health Prod.*, 663 F. Supp. 2d 841, 846 (D. Ariz. 2009) (quoting *Dietel v. Day*, 16 Ariz. App. 206, 492 P.2d 455, 457 (1972)). "Arizona courts will pierce a corporate veil and impose personal liability if the business is conducted on a personal rather than a corporate basis, and if the business was established without an adequate financial basis." *Keams v. Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 723 (D. Ariz. 1997).
The undersigned notes that Arizona law does not recognize an independent cause of action for piercing the corporate veil; rather, the doctrine is a means of imposing liability on an underlying cause of action. *See Piaquadio v. Am. Legal Funding LLC*, 2016 WL 393638 (D. Ariz. Feb. 2, 2016). The undersigned also notes that the doctrine generally applies to corporations, not LLCs, and in any event Utah law would apply here because GALLC is incorporated in Utah. *See TFH Properties, LLC v. MCM Dev., LLC*, 2010 WL 2720843 (D. Ariz. July 9, 2010) (discussing two-prong test to disregard the legal entity of a corporation under Utah law and finding that the Utah Revised Limited Liability Company Act does not prohibit LLC veil piercing). However, because the parties do not raise any of these issues in the pleadings, the undersigned will not address them further.

and the rules were therefore Val's creation. (Doc. 247 at 9). GALLC thus concludes that because Val was dismissed with prejudice, and because the dismissal acts as an adjudication on the merits that Val had no fault in creating the rules, the rules were not negligently created and GALLC cannot have negligently supplied them to anyone. *Id.* However, Defendant's argument on vicarious liability is premised on case law[8] that the Arizona Supreme Court has now expressly overruled:

> Nearly seventy-five years ago, we held in *DeGraff v. Smith* that a dismissal with prejudice is a judgment on the merits that carries preclusive effect. 62 Ariz. 261, 269–70, 157 P.2d 342 (1945). We today hold that a stipulated dismissal with prejudice of an agent-surgeon does not preclude a party from asserting a claim against the surgeon's principal for its own independent negligence. This is true even when the independent negligence claim requires proof of the surgeon's negligence. This conclusion comports with our more recent holding in *Chaney Building Co. v. City of Tucson* that a stipulated dismissal does not trigger issue preclusion because only issues that have been "actually litigated" may be precluded. 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). Thus, we disavow our holding in *DeGraff* insofar as that case and its progeny conclude that a stipulated dismissal with prejudice "operate[s] as an adjudication that [the dismissed party] was not negligent in the treatment of [the] plaintiff." *Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274, 488 P.2d 477 (1971).

*Kopp v. Physician Grp. of Arizona, Inc.*, 2018 WL 3340550, at *1 (Ariz. July 9, 2018).

Here, similar to *Kopp*, Plaintiff entered into a settlement agreement with Get Air Tucson Trampolines, LLC and Trampoline Parks, LLC (in addition to other named individuals and entities), which included Val Iverson as a member of those LLCs. (Doc. 246 Ex. 2). The settlement agreement specified that it was for all claims against all of the named entities, including their past and current members,

> with the sole exception of known or possible claims RELEASORS may allege against past or current members of Get Air, LLC for those past or current members' individual liability for actions of Get Air, LLC (*i.e.*, an "alter ego"

---
[8] Defendant also cites *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 96 (Ct. App. 2007), where the court held that "[b]ecause the doctors were, in the eyes of the law, adjudicated to have no liability to Plaintiff, neither did VVMC have any vicarious liability to Plaintiff based on the doctors' conduct." However, the court in that case relied on both *Torres* and *DeGraff* for the proposition that a dismissal with prejudice is a judgment on the merits—the very principal that the Arizona Supreme Court has now overturned in *Kopp*.

- 14 -

> theory in the event Get Air, LLC is found liable but cannot satisfy a judgment) . . . .

*Id.* The memorandum of settlement agreement further stated that:

> As to the past and current members of Defendant and as to the individual Defendants, the scope of Plaintiff's release is for all claims the Plaintiff has alleged or could have alleged except known or possible claims the Plaintiff has or may allege against any past or current member of Get Air, LLC for that individual's liability for Get Air, LLC.

(Doc. 246 Ex. 3). Thus, Plaintiff dismissed with prejudice all claims against Val Iverson but specifically reserved independent claims against GALLC.[9] Analogizing to *Kopp*, Plaintiff does "not attempt to hold otherwise faultless defendants liable for [Val Iverson's negligent conduct], but rather assert[s] that [GALLC] breached a separate duty of care in its [undertaking to create the safety rules in the EH and supply that EH to other Get Air parks as part of its support work]." 2018 WL 3340550 at ¶ 10.

The second portion of GALLC's argument is that it cannot be liable for the tortious conduct of Amy Iverson as the person responsible for creating the EH. Pursuant to the Restatement of Agency § 2, a principal is not liable to third persons for harm resulting from the tortious conduct of an independent contractor committed within the scope of the employment. "If control or right to control the agent is reserved in the principal, a master-servant relationship is created which subjects the master to liability for the servant's torts." *Bible v. First Nat. Bank of Rawlins*, 21 Ariz. App. 54, 56 (1973). "Conversely, if no control or right to control the action of the agent is vested in the principal, the agent is classified as an independent contractor, and ordinarily no liability flows from his acts to the principal." *Id.* at 56–57. The ultimate question "is whether the alleged servant is subject to the other's control or right to control in the manner in which he reaches the desired result." *Id.* at 56 (internal quotations and citation omitted).

---

[9] *See* Doc. 32 Ex. 3 (superior court order granting parties' stipulation to dismiss with prejudice, dismissing Get Air Tucson, Inc., Get Air Management, Inc., Get Air Tucson Trampolines, LLC, Trampoline Parks, LLC, Patti Goodell, Jacob Goodell, Kiersten Goodell, Scot Goodell, Alan McEwan Jr., Alicia Durfee, Scott Hansen, and Val Iverson).

As noted above and as this Court has already found,[10] although Amy Iverson was not technically employed by GALLC, Amy created the EH for GALLC's benefit and at the direction of Joan and Val Iverson, the only two members of GALLC. Further, GALLC's argument on this point again confuses the issues—Plaintiff does not allege that GALLC is vicariously liable for the acts of Amy Iverson, regardless of whether she was an independent contractor or an employee of Trampoline Parks, LLC or GALLC. Accordingly, the undersigned declines to address this argument any further.

In sum, the undersigned finds that Val Iverson's dismissal does not preclude Plaintiff from pursuing this action against GALLC. The Arizona Supreme Court has overturned the principal relied on by Defendant that a stipulated dismissal with prejudice operates as an adjudication on the merits that a defendant was not negligent, and further, Plaintiff's argument is not based on vicarious liability—Plaintiff filed suit against GALLC for its own negligence, and asserts piercing the corporate veil as a means of imposing liability to recover from Val Iverson personally for GALLC's negligence.

### D. Causal Connection Between GALLC's EH and Plaintiff's Injury

GALLC contends that there is no factual link between it, the EH, and Plaintiff's injury because GALLC's name only appears on the EH by mistake, and because there is no evidence that GALLC had control over any fact that resulted in Plaintiff's injury. Yet GALLC also presents a contradictory argument that it is also "not surprising" that its name appears on the EH because Jake Goodell took the EH from GALLC's facility, Get Air Roy. (Doc. 238 at 14).

Plaintiff counters that his claims are not only based on GALLC's name appearing in the EH, and again notes that the EH was prepared by Jessica Bybee and Amy Iverson at the direction of Val and Joan Iverson, and that Jacob Goodell went to Defendant and requested a copy of the EH specifically to use at Get Air Tucson.

While Defendant contends that "there is simply nothing to suggest that GALLC created its EH for the Tucson entity's use," this argument is belied by other evidence

---

[10] *See* footnotes 4 and 5

previously considered by the Court. (Doc. 238 at 15).[11] The Court will not repeat itself; the undersigned finds that there is a sufficient causal connection between GALLC, the EH, and Plaintiff's injury.

### E. Punitive Damages Claim

Finally, GALLC argues that Plaintiff has disclosed no facts to meet his burden to prove that Defendant acted with an evil mind as is required to support a punitive damages claim. Plaintiff did not respond to this portion of Defendant's argument in the pleadings, but conceded at oral argument that he was abandoning the punitive damages claim. (Doc. 263 at 14:16–20). Accordingly, the undersigned recommends that the District Court grant GALLC's motion for summary judgment as to Plaintiff's punitive damages claim.

### IV. RECOMMENDATION

Accordingly, the Magistrate Judge RECOMMENDS that the District Court enter an order GRANTING Get Air, LLC's Motion for Summary Judgment as to Plaintiff's punitive damages claim only, and DENYING the remainder of the motion. (Doc. 238).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 2nd day of August, 2018.

Eric J. Markovich
United States Magistrate Judge

---

[11] *See* footnotes 3, 4 and 5; *see also* Doc. 239 Ex. 24 (Jessica Bybee was the person who originally drafted the EH before turning it over to Amy, and Jessica was employed by GALLC. Jessica was given the assignment to work on the EH by Val Iverson, he gave her the safety rules to include, and she did not recall there being a rule against double or multiple flips.).