**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blake Haines,<br><br>    Plaintiff,<br><br>v.<br><br>Get Air LLC,<br><br>    Defendant. | No. CV-15-00002-TUC-RM (EJM)<br><br>**ORDER** |

Plaintiff Blake Haines suffered cervical injuries at Get Air Tucson, an indoor trampoline park owned by Get Air Tucson Trampolines, LLC. He alleges that his injuries were proximately caused by a defective employee handbook created by Defendant Get Air, LLC (GALLC). In resolving GALLC's previously filed Motion for Summary Judgment, this Court held that GALLC owed Mr. Haines a duty to exercise reasonable care in developing safety rules in the employee handbook. (Doc. 276 at 3-6.)[1] A jury trial is scheduled for November 5, 2019.

At a Pretrial Conference held on February 5, 2019 (Doc. 300), the Court denied without prejudice GALLC's Motion in Limine No. 1 re: References to "Get Air Venture" (Doc. 285) and granted GALLC's Motion in Limine No. 3 re: Condition of Premises (Doc. 287). On June 27, 2019, the Court held a *Daubert*[2] hearing on GALLC's Motion to Preclude Testimony of Anthony Gamboa. (Docs. 284, 317.)

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.
[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Below, the Court resolves Mr. Haines's Motion in Limine (Doc. 282), GALLC's Motion to Preclude Testimony of Richard Hinrichs (Doc. 283), GALLC's Motion in Limine No. 2 re: Piercing the Corporate Veil (Doc. 286), GALLC's Motion in Limine No. 4 re: All Subsequent Remedial Measures (Doc. 288), and GALLC's Motion in Limine No. 5 re: Termination of Elyana Garcia (Doc. 289). The Court will resolve GALLC's Motion to Preclude Testimony of Anthony Gamboa separately.

**I.  Mr. Haines's Motion in Limine (Doc. 282)**

Mr. Haines asks the Court to preclude GALLC from introducing or mentioning a document titled "Waiver, Release, Assumption of Risk, and Indemnity Agreement" dated August 25, 2013 (hereinafter, "Waiver"). (Doc. 282 at 2; *see also* Doc. 282-1 at 2-4.) Mr. Haines signed the Waiver on his first visit to Get Air Tucson. He was injured during his second visit on September 8, 2013. (Doc. 282 at 3.) He argues that the Waiver is inadmissible because GALLC was neither a party to it nor an intended beneficiary of it and therefore cannot enforce it or benefit from it. (*Id.* at 4-6.)[3] He further argues that GALLC waived any right to enforce the Waiver. (*Id.* at 6-8.) Since the Waiver is unenforceable, according to Mr. Haines, it is irrelevant under Federal Rule of Evidence 401, and any relevance it may have is outweighed by Rule 403 concerns. (*Id.* at 8-10.)

GALLC does not dispute that the Waiver is unenforceable and concedes that Mr. Haines's relevance argument might have merit if GALLC were relying upon a theory of express assumption of risk; however, GALLC argues that it is asserting an implied-assumption-of-risk theory and that the Waiver is relevant to an element of that defense. (Doc. 297 at 3-4.) Accordingly, GALLC asks the Court to allow it to introduce a redacted version of the Waiver for purposes of showing Mr. Haines's knowledge of the risks of his activities. (*Id.* at 1; *see also* Doc. 297-1 at 1-3.) GALLC asserts that the redaction of all contractual recital provisions and the word "waiver" from the document ameliorates any Rule 403 concerns. (Doc. 297 at 4.)

---

[3] Mr. Haines also argues that the waiver was illusory and never enforceable by any party, because the only entity listed on the waiver was Get Air Tucson, Inc, which is a fictitious entity. (*Id.* at 6-7.)

At the Pretrial Conference held on February 5, 2019, the Court ordered GALLC to file a usable redacted version of the Waiver. (Doc. 300.) GALLC complied with the Court's order, submitting two versions of the redacted Waiver—one containing original print and noticeable redacted areas, and another which is retyped such that the redactions are undetectable. (Docs. 303-1, 303-2.) Both versions of the redacted Waiver contain an acknowledgement that use of the trampoline equipment at Get Air Tucson "constitutes an inherently risky recreational activity that may result in serious injury (such as paralysis and death)," as well as a statement that Get Air will not make the trampoline park available to participants unless such participants "are willing to take personal responsibility for any and all injuries . . . that may result" from participation in activities at the park. (Docs. 303-1, 303-2.)

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it has any tendency to make a fact of consequence in determining the action either more or less probable than it would be without the evidence. Relevant evidence is generally admissible, Fed. R. Evid. 402, but it may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

Mr. Haines's acknowledgement of the risks of use of the trampoline equipment at Get Air Tucson is relevant to GALLC's implied-assumption-of-risk defense. However, the Court agrees with Mr. Haines that the Waiver—even in the redacted form appearing at Documents 303-1 and 303-2—poses a serious risk of unfair prejudice and jury confusion. Furthermore, evidence of the Waiver would be cumulative if Mr. Haines testifies at trial that Get Air Tucson conveyed to him the inherent dangers of trampoline use, including possible paralysis and death, and that he acknowledged those dangers prior to his recreational use of the Get Air Tucson trampoline park. If Mr. Haines so testifies, then the Waiver is inadmissible under the balancing test of Rule 403 of the Federal Rules of Evidence.

Accordingly, Mr. Haines's Motion in Limine will be partially granted to the extent

that GALLC may introduce the Waiver only for purposes of impeachment.[4] If GALLC intends to introduce the Waiver for impeachment purposes at trial, it shall notify the Court outside the presence of the jury and shall use a retyped version of the Waiver such as that appearing at Document 303-2, except that the font type and size should more closely match the original, and the third paragraph of the Waiver,[5] as well as the sentence currently appearing in Document 303-2 concerning assumption of risk, must be redacted in their entirety.[6]

## II. GALLC's Motion to Preclude Testimony of Richard Hinrichs (Doc. 283)

GALLC asks the Court to preclude Richard Hinrichs, Ph.D., from testifying that, had GALLC's employee handbook prohibited multiple flipping, foam-pit lifeguard Elyana Garcia would have prevented Mr. Haines's accident from occurring. (Doc. 283 at 1.) GALLC argues that Dr. Hinrichs's testimony should be precluded under Federal Rule of Evidence 702, *Daubert,* and *Kumho Tire*.[7] (*Id.* at 2.) GALLC argues that Dr. Hinrichs' testimony is speculative and unsupported, and that his training and experience in biomedical engineering do not qualify him to testify to the effect that a multiple-flip prohibition in the employee handbook would have had on Ms. Garcia's behavior. (*Id.* at 2-7.) GALLC further argues that the same reasons require exclusion of Dr. Hinrichs's opinion that it was reasonable for Jake Goodell, the owner of Get Air Tucson Trampolines,

---

[4] If Mr. Haines does not testify at trial, GALLC is granted leave to re-raise the issue of the admissibility of the Waiver in its case-in-chief; in that situation, the Rule 403 balance would differ because evidence of the Waiver would not be cumulative.

[5] The third paragraph states: "Get Air will not make the Trampoline Park available to Participants unless Participants are willing to take personal responsibility for any and all injuries to Participant . . . that may result from Participants' voluntary participation in the recreational activities available at the Trampoline Park and any of the other causes identified hereinafter." (Doc. 303-1.) The Court finds that the probative value of this language is substantially outweighed by a risk of unfair prejudice and jury confusion, as the language may lead jurors to assume that Mr. Haines contractually assumed the risk of injury.

[6] The retyped version of the Waiver contains the following statement: "Participants hereby assume the risk of personal injury or death that arise out of or relate in any way in Participants' past, present or future use of the trampoline equipment and any of the other facilities at the Trampoline Park." (Doc. 303-2.) This sentence is inadmissible under Rule 403. Because the sentence has been redacted from the version of the Waiver appearing at Document 303-1, the Court assumes that it was erroneously included in the retyped version of the Waiver appearing at Document 303-2.

[7] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

- 4 -

LLC, to rely upon the Get Air, LLC employee handbook. (*Id.* at 1.) In addition, GALLC argues that this latter opinion was not timely disclosed. (*Id.* at 1-2.)

Mr. Haines argues that Dr. Hinrichs relied upon his expertise in biomechanics and his training in trampolining and diving for his opinion that allowing a single flip into foam pits is reasonable but allowing multiple flips is not. (Doc. 295 at 2-3.) Mr. Haines also argues that Dr. Hinrichs's experience in training lifeguards on safety rules and his expertise in the "human factors" subset of biomechanics allows him to opine regarding trampoline-park safety rules. (*Id.* at 3.) Finally, Mr. Haines argues that "an expert who is qualified through experience should probably never be precluded under a *Daubert* analysis," that "Dr. Hinrichs's experience and expertise are uniquely applicable to the issues in this case," and that Dr. Hinrichs's opinions will assist the jury. (*Id.* at 7-8.)

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. To do so, the court must assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. This gatekeeping function applies not only to expert testimony based on "scientific" knowledge but also expert testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 141, 147-49. Its purpose is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Factors relevant to the reliability of expert testimony include, but are not limited to,

whether the theory or technique used by the expert "can be (and has been) tested," whether it "has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards controlling the technique's operation," and the degree of acceptance in the relevant community of expertise. *Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 149-50. Rule 702's "helpfulness" standard requires that expert testimony be relevant to issues in the case and that there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591. An expert's opinions may not be premised on "subjective belief or unsupported speculation." *Id.* at 590.

Dr. Hinrichs obtained his Ph.D. in biomechanics from Pennsylvania State University in 1982, and his curriculum vitae reflects significant consulting experience and research in the field of biomechanics. (Doc. 283-1 at 3-11.) His expert report states that he is qualified to provide expert testimony in this matter due to his "background in physics, engineering, biomechanics, and human anatomy." (Doc. 283-1 at 16.) Although not mentioned in his curriculum vitae, his expert report also states that he has experience as a competitive trampolinist in high school, a competitive diver in college, and a trampoline performance and safety instructor during graduate school. (*Id.*) Dr. Hinrichs opines that Mr. Haines's cervical spine injury "was a direct result of him being allowed to attempt a triple flip into the foam pit at Get Air Tucson," and that a rule allowing single flips into the foam pits but prohibiting multiple flips is reasonable. (Doc. 283-1 at 17-18.) Dr. Hinrichs further opines that, if Ms. Garcia had known not to allow multiple flips into the foam pit, "it is more likely than not that she would have enforced that rule," thereby preventing Mr. Haines's injuries. (*Id.* at 18.)

The Court will partially grant and partially deny GALLC's Motion. Dr. Hinrichs is qualified to opine that Mr. Haines's injuries resulted from attempting a multiple flip into the foam pit at Get Air Tucson, and that a rule allowing single flips into the foam pits but prohibiting multiple flips is reasonable. However, the Court does not find that Dr. Hinrichs's limited experience working as a trampoline safety instructor and training

1  lifeguards on safety rules is sufficient to render him qualified to offer an expert opinion
2  regarding the effect that a rule prohibiting multiple flips would have had on Ms. Garcia's
3  behavior. Furthermore, any such testimony would be speculative and would not be helpful
4  to the jury. Accordingly, Dr. Hinrichs will be precluded from testifying that Ms. Garcia
5  would more likely than not have prevented Mr. Haines's injuries by enforcing a rule
6  prohibiting multiple flips. Dr. Hinrichs will also be precluded from testifying that it was
7  reasonable for Jake Goodell to rely upon the Get Air, LLC employee handbook, as Plaintiff
8  has not shown that Dr. Hinrichs is qualified to offer expert testimony on that matter, that
9  such testimony would be helpful to the jury within the meaning of Rule 702, or that the
10 opinion was timely disclosed.

**III.   GALLC's Motion in Limine No. 2 re: Piercing the Corporate Veil (Doc. 286)**

GALLC asks the Court to preclude Mr. Haines from presenting any evidence or argument that GALLC is an alter ego of any other individual or entity described in Mr. Haines's Third Amended Complaint. (Doc. 286 at 1.) GALLC argues that it is the only defendant remaining in this case, that Mr. Haines has failed to disclose any evidence or witnesses supporting an alter-ego theory of liability, and that allowing Mr. Haines to present such a theory at trial would only confuse and mislead the jury. (*Id.* at 1-5.)

Mr. Haines urges the Court to disregard GALLC's motion on the grounds that it should have been made in the form of a dispositive motion and the deadline for filing dispositive motions has expired. (Doc. 291 at 1-4.) Mr. Haines further argues that, even if GALLC had presented its argument properly in the form of a motion for summary judgment, the argument should be rejected because a jury could reasonably conclude that GALLC was the alter ego of Val Iverson. (*Id.* at 4-7.)

The Court agrees that GALLC should have raised this issue much earlier in these proceedings. Nevertheless, GALLC is correct that, because Val Iverson has been dismissed with prejudice and is not currently a defendant in this action, Mr. Haines cannot assert a claim that Val Iverson is liable as the alter ego of GALLC. Accordingly, the Court will grant GALLC's Motion to the extent it seeks to preclude Mr. Haines from arguing that

Val Iverson, or any other defendant that has been dismissed with prejudice, is liable under an alter-ego theory.[8]

**IV.   GALLC's Motion in Limine No 4 re: All Subsequent Remedial Measures (Doc. 288)**

GALLC moves to preclude evidence that Get Air Tucson installed a sign saying "No double flips" following Mr. Haines's accident. (Doc. 288 at 1-2.) GALLC argues that the evidence is irrelevant under Federal Rule of Evidence 401, unfairly prejudicial and likely to mislead the jury under Rule 403, and potentially inadmissible under Rule 407. (*Id.* at 2-3.)

Mr. Haines responds that evidence showing Get Air Tucson installed a sign near the foam pits prohibiting double flips after Mr. Haines's accident is relevant to the issues of whether there had previously been a prohibition of such maneuvers, whether Mr. Haines knew or should have known the dangers of such maneuvers, and whether the prohibition on somersaults in the GALLC employee handbook encompassed double flips. (Doc. 293 at 3-4, 6-7.) Mr. Haines further argues that such evidence is not unfairly prejudicial and that any potential for prejudice could be cured with a simple jury instruction. (*Id.* at 4-5.) Mr. Haines also argues that GALLC lacks standing to raise a Rule 407 argument because it did not take the subsequent remedial measure at issue. (*Id.* at 5-6.) In the alternative, Mr. Haines argues that evidence of the sign is admissible under Rule 407 to show the feasibility of precautionary measures and to impeach GALLC's argument that the employee handbook's rule prohibiting somersaults constituted a prohibition on flips. (*Id.* at 6-7.)

Rule 407 of the Federal Rules of Evidence states that evidence of subsequent remedial measures is inadmissible to prove negligence, culpable conduct, a product or design defect, or a need for a warning or instruction. The purpose of the rule "is to ensure that prospective defendants will not forego safety improvements because they fear that

---

[8] If Mr. Haines seeks to present a theory to the jury that GALLC is liable as the alter ego of any other Get Air business entity, he must notify the Court outside the presence of the jury so that the Court can address the legal effect of the other entities' settlements and determine whether an offer of proof is necessary.

- 8 -

these improvements will be used against them as evidence of their liability." *In re Aircrash in Bali*, 871 F.2d 812, 816 (9th Cir. 1989) (per curiam). This purpose "is not implicated in cases involving subsequent measures in which the defendant did not voluntarily participate." *Id.* at 817. Accordingly, Rule 407 has been interpreted as applying only to subsequent remedial measures by a defendant. *See id.* Because the sign was installed by Get Air Tucson rather than GALLC, Rule 407 does not govern its admissibility; accordingly, the Court turns to Rules 401-403 of the Federal Rules of Evidence.

Testimony or other evidence showing that there was *no* sign prohibiting double flips into the foam pits at the time of Mr. Haines's accident is relevant to the issues of whether such maneuvers were prohibited at the time of the accident and whether Mr. Haines knew of the risks of such maneuvers prior to the accident. However, the relevance analysis is markedly different with respect to evidence showing that Get Air Tucson installed a sign prohibiting double flips *after* Mr. Haines's accident. Evidence of the subsequent installation of such a sign does not have any tendency to show what Mr. Haines's state of mind was at the time of the accident. Furthermore, any limited, attenuated relevance that evidence of the subsequent installation of the sign may have on the issue of whether multiple flips were prohibited at the time of the accident—either by the GALLC employee manual's prohibition on somersaults or otherwise—is substantially outweighed by a danger of unfair prejudice and confusing the issues. Accordingly, the Court will grant GALLC's Motion in Limine.

**V.  GALLC's Motion in Limine No. 5 re: Termination of Elyana Garcia (Doc. 289)**

GALLC moves to preclude evidence that Ms. Garcia was fired after Mr. Haines's accident. (Doc. 289 at 1-2.) GALLC argues that such evidence is irrelevant, unfairly prejudicial, and would have a tendency to confuse and mislead the jury. (*Id.* at 2-4.)

Mr. Haines concedes that the mere fact that Ms. Garcia was fired may not be relevant in and of itself, but he argues that the reason why she was fired is relevant. (Doc. 294 at 3.) Ms. Garcia testified that, at the time of her termination, her manager told her "we could have prevented the incident from happening." (*Id.*) Mr. Haines argues that this

is an admission against interest and therefore admissible under Federal Rules of Evidence 804(b)(3) and 807. Mr. Haines further argues that he cannot tell the jury why Ms. Garcia was fired without explaining that she was fired. (*Id.*)

The statement "we could have prevented the incident from happening" is an admission against interest admissible as a hearsay exception under Rule 804(b)(3). However, Mr. Haines has not shown that evidence of Ms. Garcia's termination is relevant to any issues in this case, and Mr. Haines may introduce evidence of the statement against interest without revealing that it was made in the context of Ms. Garcia's termination. Accordingly, GALLC's Motion will be granted to the extent that the Court will preclude testimony and evidence that Ms. Garcia was terminated after Mr. Haines's accident occurred; however, the Motion will be denied to the extent that it seeks preclusion of evidence that Ms. Garcia's manager told her "we could have prevented the incident from happening" after Mr. Haines's accident.[9]

**IT IS ORDERED**:

1. GALLC's Motion to Preclude Testimony of Anthony Gamboa (Doc. 284) **remains under advisement**.
2. Mr. Haines's Motion in Limine (Doc. 282) is **partially granted**, as set forth above.
3. GALLC's Motion to Preclude Testimony of Richard Hinrichs (Doc. 283) is **partially granted and partially denied**, as set forth above.
4. GALLC's Motion in Limine No. 2 re: Piercing the Corporate Veil (Doc. 286) is **granted**, as set forth above.
5. GALLC's Motion in Limine No 4 re: All Subsequent Remedial Measures (Doc. 288) is **granted**, as set forth above.

. . . .

. . . .

---

[9] It is not clear to the Court whether Mr. Haines intends to introduce testimony that Ms. Garcia was told by her manager that she was unreliable at the time of the accident. If Mr. Haines intends to introduce this statement during Ms. Garcia's testimony, he must identify an applicable hearsay exception.

6. GALLC's Motion in Limine No. 5 re: Termination of Elyana Garcia (Doc. 289) is **partially granted and partially denied**, as set forth above.

Dated this 3rd day of July, 2019.

_____
Honorable Rosemary Márquez
United States District Judge